# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| **MARK I RESTORATION SVC,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | **NO. 02-3729** |
| vs. | : | |
| **ZURICH (properly ASSURANCE COMPANY OF AMERICA),** | : | |
| | : | |
| **Defendant.** | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**CHRISTIE, PABARUE, MORTENSEN AND YOUNG, A Professional Corporation**
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103
(215) 587-1600

Attorneys for Defendant,
Assurance Company of America ("Assurance")

386342_1

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ………………………………………………………………………ii

I.     SUMMARY OF ARGUMENT………………………………………………..…………1

II.    STATEMENT OF FACTS……………………………………………….…………2

      A.     THE UNDERLYING ACTION GIVING RISE TO THE COVERAGE ACTION………………………………………………………………………..2

      B.     MARK I'S CLAIM FOR COVERAGE FROM ASSURANCE…………………4

III.   LEGAL STANDARD………………………………………………………………….5

IV.   ARGUMENT………………………………………………………………..….6

  A.    MARK I'S CLAIM FOR COVERAGE FOR THE <u>BROADWELL</u> ACTION FALLS SQUARELY WITHIN THE TERMS OF THE ABSOLUTE POLLUTION EXCLUSION CONTAINED IN THE ASSURANCE POLICY, WHICH THE PENNSYLVANIA SUPREME COURT HAS HELD IS CLEAR AND UNAMBIGUOUS, EVEN IN SITUATIONS INVOLVING NON-TRADITIONAL ENVIRONMENTAL POLLUTION……………………………………………….6

  B.    NOTWITHSTANDING THAT THE DUTY TO DEFEND IS BROADER THAN THE DUTY TO INDEMNIFY, ASSURANCE HAD NO OBLIGATION TO DEFEND MARK I IN THE *BROADWELL* ACTION…………………………10

      1.    There Was No Duty To Defend Mark I In The <u>Broadwell</u> Action Based On The Allegations Contained In The Third-Party Complaint…………………10

      2.    Mark I Has Mischaracterized The Nature Of The Allegations Contained In The Third-Party Complaint Filed Against It In The <u>Broadwell</u> action…………………11

      3.    Mark I's Argument That Assurance Breached The Duty To Defend By Not Considering Facts Located Outside The Four Corners Of The Third-Party Complaint Filed In The <u>Broadwell</u> Action Is In Express Contravention Of Black Letter Pennsylvania Law……………………...……………………….13

V.  CONCLUSION………………………………………………………………………17

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Hyde Athletic Industries v. Continental Cas. Co.*, 969 F.Supp. 289 (E.D. Pa. 1997)……………...16

*Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir. 1993)……………………………………………… 5

*Morse v. Lower Merion School Disctrict*, 132 F.3d 902, 906 (3rd Cir. 1997)……………………...5

*City of Pittsburgh v. West Penn Power Company*, 147 F.3d 256, 263 n.13 (3rd Cir. 1998)………...5

**STATE CASES**

*Gene's Restaurant v. Nationwide Insurance Company*, 548 A. 2d 246 (Pa. 1988)………………...10

*J.H. France Refractories v. Allstate Ins. Co.*, 626 A. 2d 502 (Pa. 1993)………………….……..10

*Keystone Spray Equipment, Inc. v. Regis Insurance Company*, 767 A. 2d 572 (Pa. Super 2001…..10

*Madison Construction Company v. Harleysville Mutual Ins. Co.*, 735 A. 2d 100 (Pa. 1999)……9

*Roman Mosaic & Tile v. Aetna Cas. & Sur.*, 704 A. 2d 665 (Pa. Super 1997)………………….10

*Scopel v. Donegal Mutual Insurance Company*, 698 A. 2d 602 (Pa. Super. 1997)………………...14

*Sorbee Intern Ltd. v. Chubb Custom Ins.*, 735 A. 2d 712 (Pa. Super 1999)………………………..10

**DOCKETED CASES**

*Christine Broadwell v. Work Restoration, Inc., et al. v. Mark I Restoration SVC, et al.*,
Court of Common Pleas of Philadelphia County, May Term, 2000, No. 2968……………………..2

Defendant, Assurance Company of America (improperly named as "Zurich") respectfully submits this memorandum of law in support of its motion to dismiss Mark I's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.     SUMMARY OF ARGUMENT

This is an insurance coverage action arising out of an underlying action that sought damages for chemical sensitivity allegedly sustained by the underlying plaintiff, Christine Broadwell, on account of chemicals that were used to remediate her home of skunk odors.  The plaintiff in the instant coverage action, Mark I Restoration SVC ("Mark I"), was named as a third-party defendant in the underlying action ("the Broadwell action") on the basis that it was one of the parties that allegedly applied chemicals in the home of the underlying plaintiff.

Mark I tendered the third-party complaint in the Broadwell action to Assurance, its liability insurer.  Assurance disclaimed coverage to Mark I for the third-party complaint on the basis of the absolute pollution exclusion in the Assurance liability insurance policy ("Assurance policy").  Mark I filed the instant coverage action, challenging the decision of Assurance to disclaim coverage.

The decision by Assurance to disclaim coverage was made based upon its comparison of the allegations contained in the third-party complaint with the terms (and exclusions) in the Assurance policy, a process dictated by long-established Pennsylvania law.  Such review revealed that the allegations contained therein fall squarely within the terms of the absolute pollution exclusion, which the Pennsylvania Supreme Court has held is clear and unambiguous, even in situations involving non-traditional environmental pollution.

Mark I's arguments in support of coverage for its costs to defend the third-party complaint are based on a mischaracterization of the pleadings (discussed in part IV.B.2, infra.) and alleged factual information that is contained outside the four corners of the third-party complaint in the Broadwell action (discussed in part IV.B.3., infra.).

## II.     STATEMENT OF FACTS

### A.     THE UNDERLYING ACTION GIVING RISE TO THE COVERAGE ACTION.

The insurance coverage action presently before this Court arises out of an underlying action captioned *Christine Broadwell v. Work Restoration, Inc., et al. v. Mark I Restoration SVC, et al.,* Court of Common Pleas of Philadelphia County, May Term, 2000, No. 2968 (Broadwell action). The complaint filed in this coverage action includes the following exhibits: Exhibit 1 – Assurance policy; Exhibit 2 – original complaint in the Broadwell action; Exhibit 3 – third-party complaint in the Broadwell action; Exhibit 4 – Assurance's (Zurich) April 2, 2001 disclaimer letter to Mark I; and Exhibit 5 – April 2, 2001 letter from Mark I to Assurance (Zurich), responding to the disclaimer letter.

In February 1999, Ms. Christine Broadwell and her son, Stephen, were allegedly forced out of their home by damage caused by the entry of skunks, namely, the release of their oils and odors. Nationwide Mutual Fire Insurance Company, Ms. Broadwell's homeowner's insurer, retained Work Restoration, Inc. to eradicate and remediate the skunk odor.

On or about April 5, 1999, Ms. Broadwell moved back into the home. In the <u>Broadwell</u> action, she alleged that, after moving back, she experienced physical symptoms believed to be associated with chemical agents used during the course of the remediation, including, but not limited to dizziness, headaches, memory loss, and facial pain and numbness.

On or about April 16, 1999, on account of the continuing presence of the chemical agents and substances in her home and the odors associated therewith, as well as her physical symptoms, Ms. Broadwell and her son were once again forced to move out of the house. On or about April 22, 1999, they returned to the home, but, again, the presence of chemical agents and/or odors forced them to move out a short time later.

Ms. Broadwell alleged in her complaint that, by virtue of the defendants' improper use of chemical agents, blocks and other foreign substances, she developed a sensitivity to them. As a result, and by virtue of the continuing presence of some or all of such chemical agents and substances in her home, and/or the odors associated therewith, she is allegedly unable to live there.

Subsequent to the filing of the complaint in the <u>Broadwell</u> action, defendant, Work Restoration, Inc., filed a third-party action against several entities, including Mark I Restoration SVC, the plaintiff in the coverage action presently before this Court. The third-party complaint filed by Work Restoration against Mark I alleges that Mark I performed work at the Broadwell residence and introduced certain chemicals, deodorizers, odor eliminators, and/or other foreign substances in an attempt to eliminate plaintiff's house odor problems. Work Restoration's third-party complaint then goes on to state the following verbatim allegation:

> 14. If plaintiff's claims are proven (same having been denied by this defendant), then the same arose in whole or part by the negligent acts or omissions of additional defendants, Klean-Air and Mark I Restoration SVC, including but not limited to the application, spraying and dispersal of chemicals,

3

deodorizers, odor eliminators, and/or other foreign substances.

### B. MARK I'S CLAIM FOR COVERAGE FROM ASSURANCE.

At the time of Ms. Broadwell's alleged injuries, Mark I was insured under Assurance Specialty Contractors policy no. SCP 31418321, issued from June 1, 1998 to June 1, 1999, that provided coverage for, *inter alia*, primary general liability, with limits in the amount of $1,000,000 each occurrence; $2,000,000 products and completed operations aggregate; and $2,000,000 general aggregate ("the Assurance policy") (a copy of which is attached to the instant complaint of Mark I as Exhibit 1).

Mark I sought coverage under the Assurance policy for the third-party complaint filed against it in the Broadwell action (a copy of the third-party complaint is attached to the instant complaint of Mark I as Exhibit 3). By way of letter dated April 2, 2001, Assurance advised Mark I that coverage was being denied on the basis that the Broadwell action was a claim for "bodily injury" as a result of alleged exposure to "pollutants" (a copy of the disclaimer is attached to the instant complaint of Mark I as Exhibit 4). Assurance's letter went on specifically to advise Mark I that its claim fell within sub-paragraph f(1)(d)(i) of the absolute pollution exclusion contained in the Assurance policy, discussed below.

On June 12, 2002, Mark I filed this coverage action, seeking declaratory relief pursuant to the Federal Declaratory Judgment Act and damages pursuant to Pennsylvania's bad faith insurance statute.[1] Since Mark I was ultimately dismissed from the Broadwell action by way of summary judgment, its present coverage claim against Assurance is limited solely to its defense costs.

---

[1] The coverage action was originally filed by Mark I against "Zurich", which is not a legal entity. Mark I's insurance policy was issued by Assurance Company of America, which is a wholly owned subsidiary of Maryland Casualty Company, which, in turn, in a subsidiary of Zurich American Insurance Company. Assurance has proposed to Mark I that this pleading error be corrected by way of stipulation.

4

### III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of an action is appropriate where plaintiff's complaint fails to state a claim upon which relief can be granted. The standard to be applied in determining a 12(b)(6) motion is well established:

> A 12(b)(6) motion tests the sufficiency of the allegations in the complaint. (citation omitted). The question then is, whether "the facts alleged in the complaint, even if true, fail to support the . . . claim." Ransom v. Marrazo, 848 F.2d at 389, 401 (3rd Cir. 1988). The pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *5A Charles A. Wright and Arthur R. Miller*, Federal Practice and Procedure, Section 1357 at 340 (2nd Ed. 1990). We apply the same standard the District Court is required to apply. We therefore accept all factual allegations in the complaint as true, and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom. Wisniewski v. Johns-Manville Corp., 759 F.2d 2761, 273 (3d Cir. 1985). However, "we are not required to accept legal conclusions, either alleged or inferred, from the pleaded facts." Mescall v. Burrus, 603 F.2d 1266, 1269 (7th Cir. 1979).

Kost v. Kozakiewicz, 1 F.3d 176, 183 (3rd Cir. 1993); *see also* Morse v. Lower Merion School District, 132 F. 3d 902, 906 (3rd Cir. 1997)("but a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss"). Nor should the court assume that plaintiff can prove facts that are not alleged in the complaint. *See* City of Pittsburgh v. West Penn Power Company, 147 F. 3d 256, 263, n.13 (3rd Cir. 1998).

As discussed below, plaintiff's complaint fails to state a claim upon which relief can be granted against Assurance, and therefore, plaintiff's action should be dismissed with prejudice as to Assurance.

IV.   **ARGUMENT**

    A.   **MARK I'S CLAIM FOR COVERAGE FOR THE <u>BROADWELL</u> ACTION FALLS SQUARELY WITHIN THE TERMS OF THE ABSOLUTE POLLUTION EXCLUSION CONTAINED IN THE ASSURANCE POLICY, WHICH THE PENNSYLVANIA SUPREME COURT HAS HELD IS CLEAR AND UNAMBIGUOUS, EVEN IN SITUATIONS INVOLVING NON-TRADITIONAL ENVIRONMENTAL POLLUTION.**

The third-party complaint filed by Work Restoration against Mark I alleges at ¶ 13 that Mark I performed work at the Broadwell residence and "introduced certain chemicals, deodorizers, odor eliminators, and/or other foreign substances in an attempt to eliminate plaintiff's house odor problems". See Complaint at Ex. 3, ¶ 13. Work Restoration's third-party complaint then goes on to state the following verbatim allegation:

> 14.   If plaintiff's claims are proven (same having been denied by this defendant), then the same arose in whole or part by the negligent acts or omissions of additional defendants, Klean-Air and Mark I Restoration SVC, including but not limited to the application, spraying and dispersal of chemicals, deodorizers, odor eliminators, and/or other foreign substances.

The Assurance policy contains the following Absolute Pollution Exclusion:

f.   Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a)   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

        However, Subparagraph (a) does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

(b)     At or from any premises, site or location which is or was at any time used by or for the handling, storage, dispersal, processing or treatment of waste.

(c)     Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d)     At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        (i) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

            Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to

7

>> the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.
>
> Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.
>
> As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks our from where it was intended to be.

> (2) Any loss, cost or expense arising out of any:
>
>> (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
>>
>> (b) Claim or "suit" by or on behalf of any person, organization or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".
>
> "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

See Complaint at Ex. 1.

Assurance disclaimed coverage to Mark I for the third-party complaint in the <u>Broadwell</u> action pursuant to subparagraph f(1)(d)(i) of the absolute pollution exclusion contained in the Assurance policy on the basis that such action involved "bodily injury" arising out of the actual,

8

alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises, site or location on which Mark I was performing operations, and the "pollutants" were brought on or to the premises, site or location in connection with such operations by Mark I. See Complaint at Ex. 4.

In Madison Construction Company v. Harleysville Mutual Ins. Co., 735 A. 2d 100 (Pa. 1999), the Pennsylvania Supreme Court examined the applicability of the absolute pollution exclusion in the context of a claim under the following circumstances. Madison was engaged in pouring and curing concrete utility trenches at the Boeing/Vertol Helicopters Facility. To cure the concrete, Madison applied a compound known as Euco Floor Coat or Eucocure. While this was being done, the construction area was enclosed in an "envelope" of polyethylene sheeting.

According to his subsequently filed complaint, Nicholas Ezzi, a Boeing employee, was summoned to the construction area to investigate a strong odor. Ezzi alleged that, as he attempted to set up an exhaust fan for the fumes emanating from the curing agent, he was overcome by the fumes, lost consciousness, and fell into an excavation site, sustaining severe and permanent injuries. *Madison* at 102.

Notwithstanding that Euco Floor Coat was a necessary tool of Madison's trade, a situation that may apply to Mark I with respect to the materials that it used while working at Ms. Broadwell's home, the Pennsylvania Supreme Court held that the absolute pollution exclusion – *identical, in pertinent part, to the exclusion contained in the Assurance policy* -- served to preclude coverage to Madison for the underlying bodily injury claim brought by Mr. Ezzi. The *Madison* court concluded that the language of the pollution exclusion was clear and unambiguous, and it expressly rejected the argument - - which Assurance acknowledges has been

9

adopted by some courts around the country - - that the pollution exclusion only applies to pollution that is environmental or industrial in nature.

Accordingly, the decision by Assurance to disclaim coverage to Mark I for the Broadwell action, pursuant to subparagraph f(1)(d)(i) of the absolute pollution exclusion contained in the Assurance policy, was entirely consistent with Pennsylvania law.

    **B.    NOTWITHSTANDING THAT THE DUTY TO DEFEND IS BROADER THAN THE DUTY TO INDEMNIFY, ASSURANCE HAD NO OBLIGATION TO DEFEND MARK I IN THE BROADWELL ACTION.**

        **1.    There Was No Duty To Defend Mark I In The Broadwell Action Based On The Allegations Contained In The Third-Party Complaint.**

Assurance acknowledges that, under Pennsylvania law, the duty to defend is broader than the duty to indemnify. *J.H. France Refractories v. Allstate Ins. Co.*, 626 A. 2d 502 (Pa. 1993). Such a duty, however, is not boundless.

Under Pennsylvania law, "An insurer's duty to defend is determined by the allegations in the underlying complaint." *Madison Construction v. Harleysville Mutual Ins. Co.*, supra (citations omitted). "It is well established that an insurer need only defend an insured in a claim if the insurance contract provides coverage for a suit of that nature. To decide whether a duty to defend exists, the court must compare the allegations in the complaint with the provisions of the insurance contract and determine whether, if the complaint allegations are proven, the insurer would have a duty to indemnify the insured." *Keystone Spray Equipment, Inc. v. Regis Insurance Company*, 767 A. 2d 572 (Pa. Super 2001), citing *Gene's Restaurant v. Nationwide Insurance Company*, 548 A. 2d 246 (Pa. 1988), see also *Roman Mosaic & Tile v. Aetna Cas. & Sur.*, 704 A.2d 665 (Pa. Super. 1997); *Sorbee Intern Ltd. v. Chubb Custom Ins.*, 735 A.2d 712 (Pa. Super. 1999).

10

The third-party complaint in the Broadwell action alleges that Ms. Broadwell's injuries were caused by Mark I's negligence in the application, spraying and dispersal of chemicals, deodorizers, odor eliminators and/or other foreign substances that were introduced by Mark I in an attempt to eliminate Ms. Broadwell's house odor problems. Such allegation falls squarely within the terms of the absolute pollution exclusion contained in the Assurance policy. Specifically, the allegation that Mark I engaged in an "application, spraying and dispersal" satisfies the "discharge, dispersal, seepage, migration, release or escape" criteria of the absolute pollution exclusion. Additionally, the allegation that Mark I used "chemicals, deodorizers, odor eliminators and/or other foreign substances" satisfies the "pollutant" criteria of the absolute pollution exclusion.

Therefore, based on a comparison between the allegations contained in the third-party complaint in the Broadwell action and the Assurance policy, a process dictated by Pennsylvania law, even if such allegations had been proven, Assurance would not have had a duty to indemnify Mark I in such action. See *Keystone Spray Equipment, Inc. v. Regis Insurance Company*, supra. Accordingly, Assurance did not have a duty to defend Mark I in the Broadwell action.

2. **Mark I Has Mischaracterized The Nature Of The Allegations Contained In The Third-Party Complaint Filed Against It In The Broadwell Action.**

Mark I states in its complaint in the instant coverage action that the allegations made against it in the Broadwell action come within the ambit of Assurance's coverage since such allegations are that Ms. Broadwell's injuries "may have been caused by the introduction of certain agents and/or other acts".

11

However, an examination of the third-party complaint filed against Mark I in the Broadwell action, including the supposedly supporting paragraphs cited by Mark I in its complaint, reveals that Mark I has improperly characterized the nature of the allegations made against it.

Mark I states at ¶ 41 of its complaint that:

> The allegations of the Complaint come within the ambit of coverage since the Joinder Complaint against Mark I Restoration SVC, which incorporates by reference the allegations of the original Complaint, alleges that the injuries of the original Plaintiff, Christine Broadwell may have been caused by the introduction of certain agents and/or other acts (See ¶16 above; Exhibit "3", ¶14).

Mark I refers to ¶16 of its coverage complaint against Assurance (a reference which makes no sense as ¶16 printed below shows) and also refers to ¶14 of the third-party complaint filed against Mark I in the Broadwell action (Exhibit "3", ¶14). ¶14 does not provide Ms. Broadwell's injuries "may have been caused by the introduction of certain agents and/or other acts" (emphasis added), but in fact expressly provides that Mark I was responsible for "the negligent... application, spraying and dispersal of chemicals, deodorizers, odor eliminators and/or other foreign substances." [2] Moreover, while Assurance disputes that the third-party complaint in the Broadwell action incorporated by reference the allegations of the original Broadwell action, it is

---

[2] ¶ 16 of the complaint filed by Mark I in the coverage action provides as follows:

> 16. On November 30, 2000, Work Restoration, Inc. filed a Writ against Seven Additional Defendants including Additional Defendant, Mark I Restoration SVC.

¶ 14 of the third-party complaint filed against Mark I provides as follows:

> 14. If plaintiff's claims are proven (same having been denied by this defendant), then the same arose in whole or part by the negligent acts or omissions of additional defendants, Klean-Air and Mark I Restoration SVC, including but not limited to the application, spraying and dispersal of chemicals, deodorizers, odor eliminators, and/or other foreign substances.

12

Assurance's position that, even if it did, it would not alter the nature of the allegations made against Mark I in the third-party complaint, for which coverage was sought.

Thus, Mark I's allegation that Ms. Broadwell's injuries "may have been caused by the introduction of certain agents and/or other acts" is a self-serving mischaracterization of the pleadings by Mark I, likely intended to place such allegations outside the ambit of the absolute pollution exclusion.  Given that the test in Pennsylvania for determining if an insurer if obligated to defend an insured is based solely on the allegations as stated in the complaint, the court must reject this attempt by Mark I to present the allegations in such an inaccurate manner.  See *Madison Construction v. Harleysville Mutual Ins. Co.*, supra.

> **3.  Mark I's Argument That Assurance Breached The Duty To Defend By Not Considering Facts Located Outside The Four Corners Of The Third-Party Complaint Filed In The <u>Broadwell</u> Action Is In Express Contravention Of Black Letter Pennsylvania Law.**

Mark I takes the position that, since the third-party complaint in the *Broadwell* action did not identify the substances allegedly used by Mark I, such substances necessarily can not be deemed pollutants. See Complaint at ¶ 44.  Additionally, Mark I asserts that, notwithstanding what the allegations may be in the third-party complaint, the reality is that Mark I's work performed at the Broadwell home did not involve the introduction of any chemicals, agents or other foreign substances. See Complaint at ¶ 46.

In essence, Mark I's argument is that, if Assurance had investigated the allegations at issue, it would have discovered that Mark I did not in fact use any "pollutants" in the course of its work at the Broadwell home (regardless of the allegations in the third-party complaint). Mark I's theory

about the procedure Assurance allegedly should have followed in handling its claim is in express contravention of Pennsylvania law.

As stated above, Pennsylvania provides that an insurer's duty to defend is determined solely by the allegations in the underlying complaint. "It has long been the law in Pennsylvania that the *nature* of the allegations contained in the complaint control whether an insurer must defend a policyholder. (citation omitted) Our supreme court has stated, '[I]t is not the actual details of the injury, but the *nature of the claim* which determines whether the insurer is required to defend' (citation omitted)." *Roman Mosaic & Tile v. Aetna Cas. & Sur.*, 704 A. 2d 665 (Pa. Super 1997) (emphasis in original). Accordingly, Mark I's argument that Assurance had an obligation to investigate the facts contained in the complaint has been consistently rejected by Pennsylvania courts.

In *Scopel v. Donegal Mutual Insurance Company*, 698 A. 2d 602 (Pa. Super. 1997), an insurer refused to defend its insured for a suit alleging that the insured willfully, maliciously and intentionally assaulted another. The complaint did not aver that the insured's actions were the result of reckless or negligent behavior. Subsequent to its insurer disclaiming a defense obligation, the insured retained private counsel and proceeded to defend the suit, just as Mark I did. During the course of depositions, it was discovered that the insured had been drinking just prior to the attack. The *Scopel* court noted that, although the depositions put the plaintiffs "on notice that they potentially had a cause of action sounding in negligence and/or recklessness, the original complaint was never amended to excise or modify the intentional and malicious flavor of the averments." *Scopel* at 604.

As assignees of the insured's insurance policy, the underlying plaintiffs in Scopel admitted that the insurer initially did not have a duty to defend, but that such a duty arose two years later

14

when the deposition testimony revealed that the insured, on account of intoxication, may have acted without the requisite intent. The Superior Court rejected this argument:

> Moreover, assuming that the Scopels had properly supplemented the certified record [by filing the depositions], we find no reason to expand the well-reasoned and long-standing principle that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself. Were this not the case, an insurer would be required to monitor the pre-trial developments of a case in which coverage was denied to insure that no discovery sheds light upon a possible claim for which a defense is mandated. We find this result unworkable and unacceptable, for the rightful denial of coverage based upon a filed complaint should relieve an insurer of the duty and burden of tracking the developments of a case in which the insurer has no legal interest.

*Scopel* at 606.

In rejecting the argument that, in considering whether an insurer's duty to defend has been triggered, consideration may be given to averments contained in discovery, but not reflected in the complaint itself, the *Scopel* court stated, "[A]s has long been the law in our Commonwealth, the allegations included within the four corners of the complaint must be dispositive of an insurer's duty to defend." *Scopel* supra, 698 A.2d at 607.

*Scopel* was relied upon by the Pennsylvania Superior Court in *Sorbee Intern Ltd. v. Chubb Custom Ins.*, 735 A. 2d 712 (Pa. Super. 1999) to preclude consideration of an affidavit submitted by the president of an insured company in support of its argument that it was entitled to a defense from its insurer. The *Sorbee* court stated, "[T]he affidavit is not admissible for our consideration of whether the allegations of the Simply Lite counterclaim potentially come within the Chubb policy language. *See Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602 (Pa. Super.1997) (only

15

facts alleged in four corners of the complaint, not those found in any subsequent discovery, are dispositive of insurer's duty to defend)." *Sorbee,* supra, 735 A. 2d at 717, n. 5.

In *Hyde Athletic Industries v. Continental Cas. Co.*, 969 F.Supp. 289 (E.D. Pa. 1997), the plaintiffs argued that, while the underlying complaints spoke of property damage, they did not state that the property damage was caused by the discharge of pollutants. In other words, according to plaintiffs, the face of the underlying complaints contained claims for property damage which might have been caused by something other than the discharge or release of pollutants, and, therefore, the insurance companies should have defended the complaints. The *Hyde* court rejected this argument, stating:

> Plaintiffs' argument is unavailing. It asks the court to forget that the underlying Government Complaint and the two third-party complaints were CERCLA and Pennsylvania HSCA cases. The complaints refer repeatedly to the disposal and arrangement for disposal of hazardous substances, chemicals, and wastes which damaged the water and land around the Site. Reading the face of the complaints, no reasonable jury could conclude that the Government and the third-party plaintiffs are referring to anything except the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants. The nature of the underlying claims clearly triggers the pollution exclusion clause.

*Hyde* at 296 – 297.

These cases make clear that any argument by Mark I that Assurance had a duty to defend it for the third-party complaint in the Broadwell action, based on any information located outside the four corners of such third-party complaint, should be rejected by this Court.

## V. CONCLUSION

Mark I has challenged the decision of Assurance to disclaim coverage for a third-party complaint in an underlying action, alleging that Mark I applied chemicals in the course of remediating skunk odors from the home of an underlying plaintiff.

The decision by Assurance to disclaim coverage was made based upon its review of the allegations contained in the third-party complaint, a process dictated by long-established Pennsylvania law. This review of the third-party complaint revealed that the allegations contained therein fall squarely within the terms of the absolute pollution exclusion, which the Pennsylvania Supreme Court has held is clear and unambiguous.

Accordingly, Mark I's claim for declaratory relief pursuant to the Federal Declaratory Judgment Act and damages pursuant to Pennsylvania's bad faith insurance statute should be dismissed with prejudice.

                                          **CHRISTIE, PABARUE, MORTENSEN
and YOUNG,
A Professional Corporation**

By: _____
**JAMES W. CHRISTIE (I.D. No. 12068)**
**WILLIAM F. MCDEVITT (I.D. No. 80206)**
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103
(215) 587-1600

Attorneys for Defendant,
Assurance Company of America ("Assurance")

Dated: August 9, 2002

17