IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK I RESTORATION SVC | : | CIVIL ACTION |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| Zurich | : | NO. 02-3729 |

**PLAINTIFF, MARK I RESTORATION SVC'S BRIEF IN OPPOSITION TO
DEFENDANT, ZURICH'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**

**I.   INTRODUCTION**

Mark I Restoration SVC (hereinafter "Mark I") filed suit against its insurer, Zurich as a result of Zurich's wrongful denial of coverage and actions, which constitute bad faith.  Plaintiff, Mark I Restoration SVC instituted this action by filing a Complaint for declaratory judgment and bad faith in the United States District Court for the Eastern District of Pennsylvania on June 12, 2002 against Defendant, Zurich (referred to by Defendant as "Assurance Company of America").  Defendant has filed a Motion to Dismiss Count I seeking declaratory judgment relief pursuant to F.R.C.P. 12(b)(6).[1]  However, accepting as true all allegations in the Complaint, and all reasonable inferences deducted therefrom along with the Exhibits attached to the Complaint, Plaintiff's Complaint states a viable cause of action for declaratory judgment relief.  Accordingly, Defendant's Motion to Dismiss Count I of the Complaint must be denied.

**II.   STATEMENT OF FACTS**

Plaintiff, Mark I is a corporation licensed to do business in Pennsylvania with business addresses in Blue Bell, Pennsylvania and Riverside, New Jersey.  (Comp. at ¶ 4).

Defendant, Zurich is an insurance company with its corporate headquarters and principal place of business in Schaumburg, Illinois.  (Comp. at ¶ 5).  Zurich is licensed to transact business

---

[1] Defendants have not moved to dismiss Count II of Plaintiff's Complaint, which properly alleges a claim for bad faith pursuant to 42 Pa. C.S. §8371.  A claim for bad faith is a separate and distinct claim and not contingent on the resolution of any underlying contract claim.  Polselli v. Nationwide Mutual Fire Ins. Co., 126 F. 3d 524 (3d Cir. 1997).

in the Commonwealth of Pennsylvania and regularly conducts business throughout Pennsylvania, with a regional office located in Philadelphia, Pennsylvania. (Comp. at ¶ 5). Zurich insured Mark I under a specialty contractor's policy No. 31418321, which policy was in full force and effect at all times relevant hereto. (Comp. at ¶ 9). A true and correct copy of the policy is attached to Plaintiff's Complaint as Exhibit "1".

Pollutants is defined in the policy to mean: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed." (See Exhibit "1").

**UNDERLYING ACTION**

Mark I was joined as an Additional Defendant in an action brought in the Court of Common Pleas of Philadelphia County, captioned <u>Christine Broadwell v. Nationwide Mutual Fire Insurance Co. and Work Restoration, Inc., et al.</u>, No. 002968, May Term, 2000. (Comp. at ¶ 10).[2] In that action, Plaintiff, Christine Broadwell filed a Complaint against Nationwide Mutual Fire Insurance Company and Work Restoration, Inc. for claims of bad faith and negligence. (Comp. at ¶ 11). Ms. Broadwell alleged that a skunk sprayed her home, which caused her to make a claim under her homeowner's insurance policy with Defendant, Nationwide for removal of the odor. (Comp. at ¶ 12). Work Restoration, Inc. was hired by Nationwide Mutual Fire Insurance Company to deodorize the property and Plaintiff alleges that she became sick from the chemicals, blocks and <u>other foreign substances</u> used by Work Restoration, Inc. (Comp. at ¶ 13; see Exhibit "2"). Ms. Broadwell's Complaint alleges that Nationwide's representatives, (and Mark I through incorporation by reference in the Joinder Complaint), "… entered the property and introduced numerous chemical agents, blocks and <u>other foreign substances</u> into the property …" (Comp. at ¶ 14; see Exhibit "2", ¶9 emphasis supplied). The Complaint further alleges that, "… by virtue of Defendant's improper use of chemical agents, blocks and <u>other foreign substances</u> as described above and below, it is

---

[2] A true and correct copy of this initial pleading is attached to Plaintiff's Complaint as Exhibit "2".

believed that Ms. Broadwell has developed a sensitivity to said agents, blocks and substances. (Comp. at ¶ 15; see Exhibit "2", ¶14 emphasis supplied).

On November 30, 2000, Work Restoration, Inc. filed a Writ against seven Additional Defendants including Mark I. (Comp. at ¶ 16). On January 31, 2001, Work Restoration, Inc. filed a Joinder Complaint against the seven Additional Defendants including Mark I Restoration. (Comp. at ¶ 17). A true and correct copy of that Joinder Complaint is attached to Plaintiff's Complaint as Exhibit "3". Therein, Defendant, Work Restoration, Inc. alleged in Count II of the Joinder Complaint that Additional Defendant, Mark I, "… performed work at Plaintiff's residence and introduced certain chemicals, deodorizers, odor eliminators, and/or other foreign substances in an attempt to eliminate Plaintiff's house odor problems." (Comp. at ¶ 18; see Exhibit "3", ¶13 emphasis supplied). Additionally, the Joinder Complaint alleged in part, as follows:

> If Plaintiff's claims are proven … then the same arose in whole or in part by the negligent acts or omissions of Additional Defendants, Klean-Air and Mark I Restoration SVC, including but not limited to the application, spraying and dispersal of chemicals, deodorizers, odor eliminators, and/or other foreign substances.

(Comp. at ¶ 19; see Exhibit "3", ¶14). Upon notice of the underlying lawsuit, Plaintiff, Mark I timely advised Zurich's agent, J.S. Braddock Agency of the suit. (Comp. at ¶ 20).

**ZURICH'S INACTION**

After an unreasonably extended period of time, Zurich denied coverage to Mark I under correspondence dated April 2, 2001. (Comp. at ¶ 21). A true and correct copy of this correspondence is attached to Plaintiff's Complaint as Exhibit "4". Zurich denied both coverage and indemnification based solely on the pollution exclusion. (Comp. at ¶ 22; see Exhibits "1" and "4"). Specifically, Zurich determined that the pollution exclusion found under Section f(1)(d)(i) precluded coverage. (Comp. at ¶ 24; see Exhibit "4").

Although neither the underlying Complaint nor the Joinder Complaint identified the nature of the product, or substance, if any, which was allegedly used by Mark I, Zurich conducted no

investigation of the facts and circumstances of the underlying Complaints as they pertain to Mark I when it issued its denial. (Comp. at ¶ 23). In the time between Mark I's notice to the Braddock Agency and the date of Zurich's denial letter, no one from Zurich ever communicated with anyone from Mark I. However, the President of Mark I, Fred W. Schultz directed correspondence to Zurich on April 9, 2001 wherein he advised Zurich that Mark I's job was strictly structural along with ozone treatment, which included no chemicals or other substances. (Comp. at ¶¶ 26-27). A true and correct copy of this correspondence is attached to Plaintiff's Complaint as Exhibit "5". Specifically, Mark I was called to do construction work, including removing sub-flooring on an enclosed porch at the Broadwell property. (Comp. at ¶ 28). Later, the Nationwide adjuster approved a supplemental expenditure for the removal of additional plywood and sub-flooring; ultimately, a third estimate for caulking and ozone treatment was completed and approved. (Comp. at ¶ 28). The itemized statement of work that Mark I performed at the Broadwell location demonstrates that Mark I did not use any chemicals in the work they performed nor did it introduce any substance into or on the property. (Comp. at ¶ 31). (A true and correct copy of this itemized statement of work is attached to Plaintiff's Complaint as Exhibit "6").

Although Mark I made several inquiries, Zurich refused to respond. Mark I was forced to retain counsel and expend significant sums in order to defend the underlying action and to seek declaratory relief in this coverage action. On August 8, 2001, Mark I, through its attorney of record, again contacted Zurich in order to resolve the instant coverage dispute. (Comp. at ¶ 33). Zurich restated its denial of coverage in this matter pursuant to the pollution exclusion found at Section f(1)(d)(i) of the policy. In May 2002, summary judgment was granted on behalf of Mark I in the underlying action. (Comp. at ¶ 35).

**PROCEDURAL HISTORY**

On June 12, 2002, Plaintiff instituted the instant action for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 as well as relief pursuant to 42 Pa. C.S. §8371

for Zurich's bad faith in its handling of this claim. The Complaint, including the Exhibits attached thereto demonstrates that Plaintiff has properly stated a claim for relief. As such, Defendant's Motion to Dismiss Count I of Plaintiff's Complaint for declaratory judgment relief must be denied.

### III. ARGUMENT

#### A. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a Defendant may move to dismiss a Complaint for failure to state a claim upon which relief can be granted. F.R.C.P. 12(b)(6). In considering such a Motion, a Court must accept as true all allegations in the Complaint, and all reasonable inferences, which can be deducted therefrom. Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989). Further, the Court may, "… consider only the allegations contained in the Complaint, exhibits attached to the Complaint and matters of public record. Pension Benefit Guaranty Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). An action should be dismissed pursuant to F.R.C.P. 12(b)(6) only where it is certain that no relief could be granted under any set of facts that could be proved. Markowitz v. Northeast Land Co., 906 F.2d 100 (3d Cir. 1990).

In light of the allegations of the instant Complaint, and the exhibits attached thereto, Mark I has properly stated claims upon which relief can be granted. Accordingly, Defendant's Motion to Dismiss Count I of Plaintiff's Complaint must be denied.

#### B. MARK I HAS ALLEGED FACTS SUFFICIENT TO DEMONSTRATE THAT IT IS ENTITLED TO DECLARATORY JUDGMENT RELIEF

Mark I's Complaint and the documents attached thereto demonstrate that Zurich had a duty to defend Mark I based on the underlying Complaints.

##### 1. The policy applies to the allegations in the underlying action

The insurer's duty to defend the insured is broader than its duty to indemnify. Wagner v. Erie Insurance Co., 801 A.2d 1226, 1233 (Pa. Super. 2002). The duty to defend arises where the allegations against the insured state a claim to which the policy potentially applies. In other words,

5

if the factual allegations of the Complaint against the insured state a claim, which would *potentially fall within the coverage* of the policy, then the insurer has the duty to defend. Wagner, 801 A.2d at 1233. Under Pennsylvania law, where coverage exists for any claim alleged, the insurer should provide a defense against the entire matter, not just as to those claims for which the coverage may exist. Nationwide Mutual Fire Co. v. Shank, 951 F. Supp. 68, 71 (E.D. Pa. 1997). As the Supreme Court has stated, "… it is not the actual details of the injury, *but the nature of the claim*, which determines whether the insurer is required to defend. Springfield Township v. Indemnity Insurance Co. of North America, 361 Pa. 461, 464, 64 A.2d 761 (1949). "In making this determination, the factual allegations of the Complaint are taken to be true and the Complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured." Biborosch v. Trans America Insurance Co., 412 Pa. Super. 505, 603 A.2d 1050, 1052 (1992), citing Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959). Any doubt regarding an insurer's duty to defend must be resolved in favor of the insured.

      The Complaint as alleged, including the attached Exhibits demonstrates that Mark I has pled sufficient facts to establish its right to coverage for defense in this matter. A declaratory judgment action is appropriate in construing insurance contracts in order to determine whether an insurer is obliged to defend and/or to indemnify one making a claim under the relevant policy.

Here, the duty to defend arises since the allegations against the insured, Mark I states a claim to which the policy applies.

The Joinder Complaint against Mark I, in the underlying action, which incorporates by reference the allegations of the original Complaint alleges that the injuries of the original Plaintiff, Christine Broadwell may have been caused by the introduction of certain agents and/or other acts. (See Exhibit "3", ¶14). In this regard, Defendant misapprehends Plaintiff's allegations.

The original *Broadwell* Complaint alleges various ways in which Work Restoration was negligent, which did not include the use and/or dispersal of purported pollutants, including Work Restoration's failure or neglect to make a reasonable inquiry regarding the proper method to irradiate or remediate skunk odors and, or its failure to train its agents and employees as to the proper use of substances introduced into the property and/or certain failure or neglect to warn Ms. Broadwell regarding the use of certain substances at her property. (See Exhibit "2", p. 5). Original Defendant, Work Restoration, Inc. incorporated by reference this Complaint in Count I of its Joinder Complaint where. (See Exhibit "3"). The Joinder Complaint filed by Work Restoration, Inc. against Mark I, states, in relevant part, as follows:

> If Plaintiff's claims are proven … then the same arose in whole or in part by *the negligent acts or omissions* of Additional Defendants, Klean-Air and Mark I Restoration SVC, *including but not limited to* the application, spraying and dispersal of chemicals, deodorizers, odor eliminators, and/or other foreign substances.

(See Complaint, ¶19; see also Exhibit "3", ¶14). These allegations oblige Zurich to defend Mark I based on the allegations of Mark I's purported general negligence on the property or on its negligence in using appropriate substances in an improper manner. Again, the Joinder Complaint alleges negligence, which *includes but is not limited to* the potential dispersal of foreign, unknown substances. The underlying personal injury claim was based, at least, in part, on allegations of negligence, which do not include alleged negligent use of purported pollutants. See Madison Construction Co. v. Harleysville Mutual Ins. Co., 557 Pa. 595, 735 A.2d 100, 105 (1999).

As outlined above, then the underlying personal injury claim, by Christine Broadwell was not based solely upon Defendant, Work Restoration, Inc. and Additional Defendant, Mark I's use or dispersal of purported pollutants, but, rather their otherwise alleged negligent behavior. Under the broader standards attached to a duty to defend, an insurer is obligated to defend its insured, "… if the factual allegations of the Complaint on its face comprehend an injury, which is actually or potentially within the scope of the policy." <u>Aetna Casualty Insurety Co. v. Rowe</u>, 437 Pa. Super. 414, 422, 650 A.2d 94, 98 (1994). On this basis alone, Zurich had a duty to defend Mark I and its Complaint states a claim upon which relief can be granted.

### 2. **The policy as applied to the allegations of the Complaint is ambiguous**

With regard to Zurich's denial based on its "absolute" pollution exclusion, the policy defines "pollutants" as follows:

> 'Pollutants' means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Comp. at ¶ 40; see Exhibit "1", p. 28, ¶I). The policy does not further define "irritant or contaminant."

In order to determine whether an insurer has a duty to defend, this Court must interpret the insurance policy to determine the scope of coverage and then analyze the Complaint filed against the insured to determine whether the claims asserted potentially fall within that coverage. See <u>Biborosch</u>, 603 A.3d at 1052. An interpretation of an insurance contract is a matter of law. <u>Municipality of Mt. Lebanon v. Reliance Ins. Co.</u>, 778 A.2d 1228, 1230 <u>citing</u> <u>Madison Construction Co. v. Harleysville Mutual Ins. Co.</u>, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). If an ambiguity exists, it must be construed in favor of the insured. <u>Standard Venetian Blind Co. v. American Empire Ins.</u>, 503 Pa. 300, 304-05, 469 A.2d 563, 566 (1983). A contract term is ambiguous, "… if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. <u>Hutchison v. Sunbeam Coal Co.</u>, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986). As

8

the Supreme Court instructed in Madison, 735 A.2d at 106, this is not a question to be resolved in a vacuum. "Contractual terms" are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. Madison, 735 A.2d at 106. As the Supreme Court observed, the "polestar" of this inquiry, is the language of the insurance policy.

Recently, the Pennsylvania Supreme Court had an opportunity to construe an almost identical pollution exclusion to the exclusion applicable in this matter in Lititz v. Steely, 567 Pa. 98, 685 A.2d 975 (2001). The Supreme Court held that the first inquiry is whether the substance at issue is a pollutant within the meaning of the exclusion. Id. @ 980. The Court noted that to determine the scope of the term pollutant it is necessary to focus on the particular substance. Id. @ 981.

Nowhere in the underlying Complaint or Joinder Complaint is the substance upon which the underlying cause of action is based or described. The underlying Complaint discusses the introduction of chemicals, blocks and other foreign substances. (Exhibit "2", ¶9). The Joinder Complaint states Mark I introduced certain chemicals, deodorizers, odor eliminators and/or other foreign substances. (Exhibit "3", ¶13). Thus, it is impossible by merely referencing the underlying Complaints to determine whether the substances at issue comes within the definition of pollutant in the Complaint.[3] On this basis, Zurich's Motion must be denied.

Zurich thus had a duty to defend Mark I, since the allegations of the underlying Complaint fall outside the policy's pollution exclusion. Paragraph 14 of the Joinder Complaint, as set out above, alleges that, "… if Plaintiff's claims are proven, then the same arose … by the negligent acts or omissions of … Mark I Restoration SVC, including but not limited to the application, spraying and dispersal of chemicals, deodorizers, odor eliminators *and/or other foreign substances*. (Comp. at ¶ 19; Exhibit "3", ¶14). Although Defendant alleges the contrary, these allegations do not fall

---

[3] The application of the pollution exclusion also fails in light of the fact that the policy requires: discharge, dispersal, seepage, migration, release or escape of the "pollutant" to have the exclusion apply. Here as in Lititz, those terms are ambiguous when applied to the allegations in the Complaint.

squarely within the "absolute" pollution exclusion. (See Defendant's Memorandum of Law in Support of its Motion to Dismiss, p. 11).

Specifically, Zurich's policy defines pollutants, in relevant part, as, "… any solid, liquid, gaseous or thermal *irritant or contaminant*, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste… (Comp. at ¶ 40; Exhibit "1", p. 28, ¶I). The policy does not further define "irritant" or "contaminant". The definition of pollution does not expressly include deodorizers, odor eliminators, which may include vanilla extract, or other foreign substances as alleged in the Joinder Complaint. Defendant's analysis of whether it has a duty to defend Mark I pursuant to the allegation in Paragraph 14 of the Joinder Complaint ignores the other products, elements or substances in the allegation, i.e. deodorizers, odor eliminators and/or foreign substances. Since these unknown products, substances or elements, including deodorizers, odor eliminators and/or other foreign substances do not fall within the exclusion, or rather fall outside of the exclusion, Zurich is obliged to defend Mark I. Again, the duty to defend exists where, "… the factual allegations of the Complaint against the insured state a claim which would potentially fall within coverage of the policy." Biborosch, 603 A.2d at 1052. Where coverage exists for any claim alleged, the insurer should provide a defense against the entire matter, not just as to those claims for which coverage may exist. Nationwide Mutual Fire Co. v. Shank, 951 F. Supp. 68, 71 (E.D. Pa. 1997). Based on the foregoing, the Complaint as alleged states a claim upon which declaratory judgment relief can be granted. Accordingly, Defendant's Motion to Dismiss Count I of Plaintiff's Complaint must be denied.

With regard to Zurich's specific denial of coverage based on its application of the policy's pollution exclusion, the Complaint similarly states a claim for relief. As the Supreme Court dictated in Madison, this Court must determine whether the specific substance or product at issue is a pollutant within the meaning of the particular insurance contract. Madison, 735 A.2d at 107. However, as alleged in Movant's Complaint, the original Defendant, Work Restoration, Inc. failed

in its Complaint to identify any substance allegedly used by Mark I on the Broadwell property. (Comp. at ¶ 43).  Since the Complaint does not identify the substances allegedly used by Mark I, such substances necessarily cannot be deemed "pollutants".  Again, in Madison, the Supreme Court emphasized the fact that a Court must focus on the specific product at issue.  Madison, 735 A.2d at 107.  Contrary to the Madison case, and other pollution exclusion cases, the purported substance, or product used in this case, if any, has not been identified by Zurich or in the underlying Complaints.  Cf., Lititz Mutual Ins. Co. v. Steely, 567 Pa. 98, 785 A.2d 975 (2001) (where Court determined that while lead paint was a pollutant, the absolute pollution exclusion did not bar coverage since the process by which lead paint degraded did not involve a discharge, dispersal, release or escape); Municipality of Mt. Lebanon, 778 A.2d 1228 (Pa. Super. 2001) (where Court determined that evidence was insufficient to prove that natural gas was unambiguously a pollutant as defined by the policy).  Zurich failed to investigate and, therefore, cannot prove that the substance purportedly involved was actually a "pollutant", since that substance has never been identified by Zurich.  Zurich's duty to defend is indisputable.  Since, according to the Supreme Court's decision in Madison, unidentified substances necessarily cannot be pollutants.  In other words, the policy definition is necessarily ambiguous with regard to an unidentified substance. Where an insurance policy is deemed ambiguous, the policy provision must be construed in favor of the insured and against the insurer.  Moreover, a Complaint is to be liberally construed with all doubts as to whether the claims may fall within coverage of the policy to be resolved in favor of the insured.  Finally, where coverage exists for any claim alleged, the insurer should provide a defense against the entire matter.  Shank, 951 F. Supp. at 71.  As outlined above, Mark I did not introduce any chemicals, agents, or other foreign substances into the Broadwell home.  The underlying Complaints did not identify any specific product and Zurich did not investigate or identify one either. Consequently, the pollution exclusion cannot apply to the claims and/or the actual acts underlying this case.

Under the terms and conditions of the insurance policy, Zurich is obligated to defend and indemnify Plaintiff based upon the original Complaint and Joinder Complaint filed in the Common Pleas Court of Philadelphia County. Nothing in the provisions or exclusions of the subject insurance policy in any way excludes Plaintiff from coverage for the acts alleged in the Complaint and Joinder Complaint attached to Plaintiff's Complaint as Exhibits "2" and "3".

Based on the foregoing, Mark I's Complaint, as alleged, including the documents attached thereto, state a claim upon which declaratory judgment relief can be granted. Accordingly, Defendant's Motion to Dismiss must be denied.

## IV.   CONCLUSION

For all the foregoing reasons, Mark I Restoration SVC respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

**MAYERS, MENNIES & SHERR, LLP**

BY: _____
ANTHONY R. SHERR, ESQUIRE
Attorney for Plaintiff

3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300
Fax (610) 825-6555

**CERTIFICATE OF SERVICE**

I, Cheryl Zeigler, hereby certify that on the 22nd day of August, 2002, a true and correct copy of Mark I Restoration SVC's Brief in Opposition to Defendant, Zurich's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), was served via Certified Mail, Return Receipt Requested, upon the following:

James W. Christie, Esquire
William F. McDevitt, Esquire
**Christie, Pabarue, Mortensen and Young**
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103
(215) 587-1600


BY: _____
Cheryl Zeigler
Legal Assistant to Anthony R. Sherr