IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK I RESTORATION SVC, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO.   02-3729 |
| ASSURANCE COMPANY OF | : | |
| AMERICA, | : | |
| Defendant | : | |

MEMORANDUM

**RUFE, J.**                                                                                                               **March 12, 2003**

      This insurance coverage dispute comes before the Court on Defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted.  For the reasons set out below, Defendant's motion is granted.

**I.   BACKGROUND**

      Plaintiff in this action is Mark I Restoration SVC ("Mark I"), a Pennsylvania corporation.  Defendant is Mark I's insurer, Assurance Company of America ("Assurance"), a New York insurance company with its principal place of business in Illinois.  Jurisdiction in the case is premised on diversity of citizenship, see 28 U.S.C. § 1332, and Pennsylvania law controls the issues before the Court.  As the Court is considering a motion to dismiss, the following facts are gleaned from the complaint and the exhibits attached thereto.

      The current dispute has its roots in an underlying negligence and bad faith action filed in Broadwell v. Work Restoration (the "Broadwell Action").  To briefly summarize the Broadwell Action, the plaintiff's home was damaged when it was sprayed by a skunk, and she made a claim for coverage to her homeowner's insurer, Nationwide Mutual Fire Insurance Company.  Nationwide hired Work Restoration, Inc. to deodorize and remediate plaintiff's home.  The

plaintiff alleged that Work Restoration misused chemicals during the remediation, causing bodily injury to her. She then filed suit against Nationwide and Work Restoration in the Court of Common Pleas of Philadelphia. On November 30, 2000, Work Restoration joined additional defendants to the Broadwell Action, including Mark I. In its third party complaint, Work Restoration alleged that Mark I introduced certain chemicals and deodorizers while performing work in the plaintiff's home, and thus, if Work Restoration were ultimately held liable, Mark I was liable to Work Restoration on a theory of contribution and/or indemnification. Mark I denied liability, arguing that it performed structural work only at the plaintiff's residence, and never used any chemicals or other substances.

At the time that the plaintiff's injuries arose, Mark I was insured under an Assurance liability policy (the "Assurance Policy"). Mark I sought coverage for Work Restoration's claims in the Broadwell Action, but Assurance denied coverage. Citing a pollution exclusion, Assurance took the position that the claims in the Broadwell Action were for "bodily injury" as a result of alleged exposure to "pollutants," and thus not covered by the Assurance Policy. Mark I continued to request coverage from Assurance while defending the Broadwell Action, but Assurance failed to respond. In May 2002, summary judgment was granted in favor of Mark I in the Broadwell Action. Mark I filed the instant action on June 12, 2002, seeking a declaratory judgment (Count 1) and alleging bad faith (Count 2). Assurance thereafter moved to dismiss all counts of the complaint for failure to state claim.

In an October 24, 2002 conference with the Court, counsel for both parties stipulated that the declaratory judgment count is properly styled a breach of contract claim. Because Mark I successfully defended the Broadwell Action, the duty to indemnify is not at issue, and thus Mark

I's allegations center on Assurance's alleged duty to defend and for alleged bad faith conduct.

## II.  STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom, and must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  Claims should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A court generally considers only the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citations omitted).

## III.  DISCUSSION

In Part A, the Court will discuss Mark I's claim arising out of Assurance's alleged failure to fulfill its contractual duty to defend in the Broadwell Action.  Part B will discuss Mark I's claim for bad faith.

### A. Duty to Defend

It should be noted from the outset that it "has long been the law in Pennsylvania that the *nature* of the allegations contained in a complaint control whether an insurer must defend a policyholder." Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co., 704 A.2d 665, 668 (Pa.

Super. Ct. 1997). In other words, "[i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." Springfield Twp. v. Indemnity Ins. Co. of N. Am., 64 A.2d 761, 762 (Pa. 1949). The Pennsylvania Superior Court recently outlined the appropriate analysis for determining whether an insurer has a duty to defend its insured:

> [The court] must compare the allegations in the complaint with the provisions of the insurance contract and determine whether, if the complaint allegations are proven, the insurer would have a duty to indemnify the insured. In the event that the complaint alleges a cause of action which may fall within the coverage of the policy, the insurer is obligated to defend. In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured.

Unionamerica Ins. Co., Ltd. v. J.B. Johnson, 806 A.2d 431, 433-34 (Pa. Super. Ct. 2002) (internal citations omitted). In light of this guidance, the Court now turns to analyzing whether Mark I's complaint in the instant matter has sufficiently alleged a breach of the duty to defend. Resolution of this question will require an examination of the third party complaint against Mark I in the Broadwell Action, as well as the terms of the Assurance Policy.

The Broadwell Action third party complaint alleged that Mark I "performed work at plaintiff's residence and introduced certain chemicals, deodorizers, odor eliminators, and/or other foreign substances in an attempt to eliminate plaintiff's house odor problems." Third Party Complaint at ¶ 13, attached to Plaintiff's Complaint at Ex. 3. It also states, "If plaintiff's claims are proven . . . then the same arose in whole or in part by the negligent acts or omissions of . . . Mark I . . . including but not limited to the application, spraying and dispersal of chemicals, deodorizers, odor eliminators, and/or other foreign substances." Id. at ¶ 14.

Assurance argues that in light of the above-quoted allegations against Mark I, it was justified in denying insurance coverage to Mark I under the pollution exclusion in the Assurance Policy. By its terms, the Assurance Policy does not apply to:

> f. Pollution
> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
> . . .
> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:
> (i) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor . . . .

Assurance Policy, Commercial General Liability at § I.f.(1)(d)(i), attached to Plaintiff's Complaint at Ex. 1. The term "Pollutants" is later defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Id. at § V, "Definitions" at ¶ 15. Assurance denied coverage on the basis that the third party complaint in the Broadwell Action involved "bodily injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises, site or location on which Mark I was performing operations, and that the "pollutants" were brought on or to the premises, site or location in connection with such operations by Mark I. See Letter from Shannon O. Colvin to Mark I, dated April 2, 2001, attached to Plaintiff's Complaint at Ex. 4.

As a preliminary matter, the Court must address Mark I's contention that the Court should reference not only the third party complaint, but also the original complaint filed in the

Broadwell Action. Mark I does so in order to advance its argument that the third party complaint includes allegations of "general negligence" on Ms. Broadwell's property, or negligence in using appropriate substances in an improper manner. Looking at the third party complaint first, Mark I directs the Court to the phrase "*including but not limited to* the application, spraying . . . [etc.]," and suggests that this phrase operates to embrace allegations of "general negligence," thereby expanding the scope of the third party complaint beyond allegations of negligent application or spraying of pollutants. See Plaintiff's Brief in Opposition at 7. The essential premise of this argument is that the third party complaint somehow incorporated by reference the original complaint in the Broadwell Action; the original complaint being the only source of any allegations of so-called "general negligence" that could be read as somewhat divorced from the allegations of negligent dispersal of pollutants. See Original Complaint in Broadwell v. Work Restoration at ¶ 18, attached to Plaintiff's Complaint at Ex. 2. Assurance urges the Court to reject this premise, and to focus only on the third party complaint in rendering today's decision.

     An examination of the third party complaint reveals that it does not expressly incorporate the original complaint. Rather, it merely states that the original complaint is "[a]ttached hereto" and marked as an exhibit. Third Party Complaint at ¶ 1. The Court is mindful that it is obligated to construe the third party complaint liberally, and to resolve all doubts in favor of the insured, Mark I. See Unionamerica, 806 A.2d at 433-34. Nonetheless, the Court cannot within reason read the third party complaint as having incorporated by reference the allegations found in the original complaint based on the fact that it was attached as an exhibit. More importantly, the third party complaint states explicitly the negligent acts or omissions allegedly committed *by Mark I*: "spraying and dispersal of chemicals, deodorizers, odor eliminators, and/or other foreign

substances." Third Party Complaint at ¶ 14. The third party complaint is devoid of mention or reference to the allegations of "general negligence" made in the original complaint,[1] and the Court will not impose them upon the third party complaint in the guise of a liberal construction. Rather, the Court will only look to the allegations against Mark I in the third party complaint. Cf. Keystone Spray Equip., Inc. v. Regis Ins. Co., 767 A.2d 572, 574 (Pa. Super. Ct. 2001) (noting that courts must compare allegations in a complaint with provisions of the insurance contract when determining whether insurer had duty to defend).

Turning to the heart of this dispute, Assurance contends that the third party complaint allegation that Mark I engaged in an "application, spraying and dispersal" (Ex. 3, ¶ 14) satisfies the "discharge, dispersal, seepage, migration, release or escape" criteria of the Assurance Policy pollution exclusion (Ex. 1, § I.f.(1)), and that the allegation that Mark I used "chemicals, deodorizers, odor eliminators and/or other foreign substances" (Ex. 3, ¶ 14) satisfies the criteria for "pollutant" in the pollution exclusion (Ex. 1, § V, ¶ 15). Mark I disagrees, and contends that the allegations in the third party complaint fall outside of the Assurance Policy pollution exclusion.

Mark I argues that the terms of the Assurance Policy pollution exclusion are ambiguous when applied to the allegations in the third party complaint, and thus must be construed in favor of the insured, Mark I. Specifically, Mark I contends that because the third party complaint does not identify the particular product(s) that Mark I allegedly sprayed and dispersed, an ambiguity

---

[1] In its Opposition to Assurance's motion, Mark I points to the following as examples of allegations of "general negligence": failure "to make a reasonable inquiry regarding the proper method to eradicate and remediate the skunk odor from the Property"; and failure "to inform, instruct or train its agents and employees as to the proper use of the chemical agents and substances introduced into the Property." Original Complaint at ¶¶ 18(a), (e).

is present as to whether the third party complaint allegations permit Assurance to conclude that the product in question is a "pollutant" as that term is defined in the Assurance Policy. It notes that ¶ 14 of the third party complaint alleges dispersal of "chemicals, deodorizers, odor eliminators, and/or other foreign substances," and argues that the plain meaning of these words does not so clearly fall within the definition of "pollutant" as to permit Assurance to deny coverage.

Interpretation of an insurance contract is generally performed by a court rather than a jury. Madison Constr. Co. v. Harlesyville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). The goal of interpreting the contract is to ascertain the intent of the parties as manifested by the language of the written instrument. Id. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer. Unambiguous language, however, must be given effect. Id.

Whether contractual language is ambiguous turns on whether the language is reasonably susceptible of different constructions and capable of being understood in more than one sense. Id. This question must be resolved in reference to a particular set of facts.[2] Id. The court should not distort the meaning of the language or resort to a strained contrivance in order to find ambiguity. Id. Ultimately, "if the allegations of the underlying complaint 'may or may not fall' within the pollution exclusion clause, the insurer must defend." Hyde Athletic Indus., Inc. v.

---

[2] Assurance argues that because the Pennsylvania Supreme Court found an identical pollution exclusion to be unambiguous in Madison, the Madison decision compels the Court to reach the same conclusion. This argument is misguided, as it asks the Court to resolve the ambiguity issue in a vacuum. See Madison, 735 A.2d at 106, 107 ("[The issue of ambiguity] is not a question to be resolved in a vacuum.") ("[A]mbiguity (or the lack thereof) is to be determined by reference to a particular set of facts . . . .").

Continental Cas. Co., 969 F. Supp. 289, 295 (E.D. Pa. 1997) (quoting Air Prods. and Chems., Inc. v. Hartford Accident and Indemn. Co., 25 F.3d 177, 180 (3d Cir. 1994)).

Guided by the analytical framework set forth in the Pennsylvania Supreme Court's decision in Madison, the Court must determine whether the policy's definition of "pollutant" applies unambiguously to the "chemicals, deodorizers, odor eliminators, and/or other foreign substances" identified in the third party complaint. See 735 A.2d at 107. The Court agrees with Mark I that, unlike the case in Madison or similar cases, there is not a specific, identifiable product at issue here. See id. (analyzing whether "Euco Floor Coat," a floor sealant, is a "pollutant"); see also Brown v. Am. Motorists Ins. Co., 930 F. Supp. 207, 208-09 (E.D. Pa. 1996) (analyzing whether "fumes" from a "chemical waterproofing sealant" is a "pollutant"); Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 980 (Pa. 2001) (analyzing whether "lead-based paint" is a "pollutant"); Wagner v. Erie Ins. Co., 801 A.2d 1226, 1231-32 (Pa. Super. Ct. 2002) (analyzing whether "gasoline" is a "pollutant"). This factual distinction does not end the Court's inquiry, however. The Court's role in these circumstances is to predict how the Pennsylvania Supreme Court would rule if confronted with the same facts. Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 528 n.3 (3d Cir. 1997).

Mark I urges the Court to adopt a narrow reading of ¶ 14 the third party complaint, and suggests that because it includes a non-specific reference to "deodorizers, odor eliminators, and/or other foreign substances," the Court should find that such vague terms necessarily inject some ambiguity into the question of whether the third party complaint alleges dispersal of a "pollutant." Assurance, on the other hand, asks the Court to give this language a somewhat broader reading, and to focus on the essential character of the claim against Mark I. Upon

reviewing the guiding principles set forth in Pennsylvania jurisprudence, the Court concludes that Assurance's argument must prevail.

A review of Pennsylvania case law reveals that courts apply a common sense perspective when addressing an insurer's duty to defend. The Pennsylvania Supreme Court has directed that "[i]t is not the actual details of the injury, but the *nature of the claim* which determines whether the insurer is required to defend." Springfield Twp., 64 A.2d at 762 (emphasis added). Similarly, the Pennsylvania Superior Court, in determining whether gasoline is a "pollutant" for purposes of a insurance contract pollution exclusion, suggested that "the proper focus is on the specific product at issue *in relation to the events giving rise to [the insured's] claim*. . . ." Wagner, 801 A.2d at 1232 (emphasis supplied) (internal quotes and brackets omitted). This is in concert with the Pennsylvania Supreme Court's emphasis that "ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts . . . ." Madison, 735 A.2d at 107; cf. Mut. Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint . . . . [T]o allow the manner in which the complaint frames the request for redress to control in a case . . . would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies.").

Pennsylvania courts often turn to dictionary definitions of specific products in order to determine whether such products are a "pollutant." See, e.g., Wagner, 801 A.2d at 1232 (examining the dictionary definition of "gasoline"). However, there is no "product" at issue here. Rather, the third party complaint only includes descriptive terms: "chemicals, deodorizers,

odor eliminators, and/or other foreign substances." Third Party Complaint at ¶ 14. "Chemicals" unquestionably meets the definition of "pollutant" because it is listed in the definition itself. The terms "deodorizers" and "odor eliminators" are somewhat self-defining, and thus elude meaningful definition in this context. To wit, "deodorizers" is the plural noun form of "deodorize," which is unhelpfully defined as "to eliminate or prevent the offensive odor of." Merriam Webster's Collegiate Dictionary 309 (10th ed. 2001); see also Random House Dictionary of the English Language 533 (unabridged) (2d ed. 1987) (defining "deodorize" as "to rid of odor, esp. of unpleasant odor"). Taken in its broadest sense, something that eliminates or prevents an offensive odor could include everyday soap, anti-perspirant, burning incense, or even an oscillating fan. However, this almost unlimited interpretation is only possible in a vacuum. As the Pennsylvania Supreme Court has directed, the Court must not engage in speculation; rather, it must focus on "the nature of the claim," and make "reference to a particular set of facts" when examining an alleged duty to defend. Springfield Twp., 64 A.2d at 762; Madison, 735 A.2d at 107.

Similarly, and more obviously, a dictionary definition of "other foreign substances" would not settle its exact meaning. Indeed, this particular phrase smacks of intentional ambiguity, suggesting the phrase is intended to serve as a catch-all. Hence, the following question not only brings this discussion full circle, but also serves to focus the inquiry: "a catch-all *for what*?" In order to answer that question, the Court must examine the context in which these words appears, *i.e.*, the Court must examine "the nature of the claim" as set forth in the third party complaint. Id.; see also Wagner, 801 A.2d at 1232 ("the proper focus is on the specific product at issue *in relation to the events giving rise to [the insured's] claim. . . .*")

(emphasis supplied).

An examination of the third party complaint reveals a lawsuit centered on alleged negligent application of chemicals, resulting in physical injuries. See Third Party Complaint at ¶ 5 ("The plaintiff avers that . . . she was forced to move out of her house because of skunk odors *and that certain chemical agents that [original ] defendant . . . negligently applied,* in an attempt to eradicate said odors, *caused her certain physical injuries and other damages.*") (emphasis added). The raison d'etre for the third party complaint is to join additional defendants to the suit, and to allege a shared legal responsibility for alleged negligent application of chemical agents, and ultimately to impose joint and several liability for such alleged negligence (or direct liability over to the plaintiff). Id. at ¶ 15. Specifically, the third party complaint alleges that Mark I "introduced certain chemicals, deodorizers, odor eliminators, and/or other foreign substances in an attempt to eliminate plaintiff's house odor problems." Id. at ¶ 13. The third party complaint describes Mark I's alleged method as "application, spraying and dispersal" of these substances. Id. at ¶ 14.

Taken in context, and with reference "to a particular set of facts," there is no ambiguity here. Madison, 735 A.2d at 107. Discerning ambiguity here would force the Court to "resort to a strained contrivance," and to manufacture an unreasonable interpretation of the allegations made in the third party complaint. Id. at 106. The Court does not believe that the Pennsylvania Supreme Court would follow such a course. A common sense reading of these allegations leads the Court to agree with Assurance that the allegation that Mark I used "chemicals, deodorizers, odor eliminators and/or other foreign substances" satisfies the criteria for "pollutant" in the

pollution exclusion.  See Third Party Complaint at ¶ 14; Assurance Policy at § V, ¶ 15).[3]

The Court's conclusion is supported by another insurance coverage decision from this district, Hyde Athletic Industries, Inc. v. Continental Casualty Co., 969 F. Supp. 289 (E.D. Pa. 1997).  In Hyde, two manufacturers sued several of their insurance carriers for breach of the duty to defend.  The underlying civil action involved a cost recovery and contribution suit brought by the federal government against the manufacturers pursuant to federal and state environmental laws (CERCLA and HCSA, respectively), as well as a third party complaint by other potentially responsible parties.  See id. at 292-93.  The insurance companies argued they had no duty to defend because a pollution exclusion clause excluded coverage for the underlying complaints.  See id. at 295.

The underlying complaints alleged that the manufacturers disposed of hazardous substances at the site in question, and thus were liable under CERCLA and HSCA.  The complaints included allegations that the manufacturers disposed of "scrap leather, glues and other wastes" at the site.  Id. at 295.  The manufacturers argued that based on these allegations, the insurers could not have determined that the property damage at issue would be found to have been caused by the release of pollutants, as required by the pollution exclusion.  Specifically, they argued "that the underlying complaints speak of property damage, but do not state that the property damage at the Site was caused by the discharge of pollutants." Id. at 296.  Therefore,

---

[3] In a two sentence footnote, Mark I makes an anemic effort to argue that the third party complaint allegation of "application, spraying and dispersal" of pollutants does not meet the Assurance Policy pollution exclusion requirement of "discharge, dispersal, seepage, migration, release or escape" of pollutants.  Third Party Complaint at ¶ 14; Assurance Policy at § I.f.(1)(d)(i).  Sadly, this Court cannot dispose of the instant motion without confirming that a "dispersal" *is* a "dispersal," and that Mark's I's argument is totally without merit.

so they argued, the insurers could not have ruled out that the property damage might have been caused by *something other than* the discharge of pollutants, and the insurers should have defended against the complaints. The Hyde court rejected this argument:

> [The manufacturers ask] the court to forget that the underlying [complaints] were CERCLA and Pennsylvania HSCA cases. The complaints refer repeatedly to the disposal and arrangement for disposal of hazardous substances, chemicals, and wastes which damaged the water and land around the Site. Reading the face of the complaints, no reasonable jury could conclude that the Government and the third-party plaintiffs are referring to anything *except* "the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants." The nature of the underlying claims clearly triggers the pollution exclusion clauses.

Id. at 296-97 (citation omitted). The Court finds this rationale applicable in the instant matter. Mark I would have this Court ignore the fact that the third party complaint against it asserts joint and several liability for alleged negligent misuse of chemicals that resulted in bodily injury. The nature and character of this claim is clearly the type of action encompassed by the pollution exclusion clause. Like the Hyde court, this Court will not ignore the context of the Broadwell Action in favor of an unreasonably narrow reading of the terms of the third party complaint.

Accordingly, the Court holds that the Assurance Policy pollution exclusion is not ambiguous as applied to the allegations in the third party complaint, Mark I's claim for coverage is precluded by the exclusion, and thus Assurance was justified in denying coverage. As a consequence, Mark I's Complaint fails to state a claim for which relief may be granted, and Count I of the Complaint is dismissed.

Permitting Mark I to file an amended complaint would be futile because Assurance's liability will always turn on the four corners of the third party complaint, and the Assurance

Policy.  As explained above, these documents do not create a cause of action in Mark I for breach of contract.  Accordingly, Mark I's allegations of breach of contract are precluded as a matter of law, and the claim is dismissed with prejudice.  Cf. Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (an amendment is futile "if the amendment will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss").

### B.     Bad Faith

Mark I asserts a cause of action under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371.  Specifically, Mark I alleges that Assurance breached its duty to comply with a duty to act in good faith by "(a) Failing to conduct an adequate and/or reasonable investigation of Plaintiff's claim; [and] (b) Denying coverage without having conducted an adequate and/or reasonable investigation of Plaintiff's claim based on all of [sic] available information."  Plaintiff's Complaint at ¶ 53.  However, this claim must fail as a matter of law.

As discussed above, the insurer's duty to defend is determined by looking at the factual allegations in the complaint, and whether those allegations state a claim which could potentially fall within the coverage of the policy.  See Unionamerica, 806 A.2d at 433-34 (duty to defend determined by reference to the complaint and insurance policy); Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 607 (Pa. Super. Ct. 1997) ("[A]s has long been the law in our Commonwealth, the allegations included within the four corners of the complaint must be dispositive of an insurer's duty to defend.").  As such, Assurance bore no duty to further investigate the case, and properly based its decision on the complaint and the terms of the Assurance Policy alone.  See Hyde, 969 F. Supp. at 307-08 ("An insurer determines its

obligations to defend its insured in a lawsuit by looking at the complaint.  There is no bad faith in failing to investigate the underlying facts."); Humphreys v. Niagara Fire Ins. Co., 590 A.2d 1267, 1272 (Pa. Super. Ct.) (finding no bad faith based on failure to investigate facts underlying allegations in the complaint because insurer "was required merely to look to the complaint, look at the nature of the claims against Mr. Humphreys, and decide whether, if the allegations were proven to be true, would the policy provide coverage"), allo. denied, 598 A.2d 994 (Pa. 1991).

Liability under the Pennsylvania bad faith statute requires a showing that "(1) the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994), allo. denied, 659 A.2d 560 (Pa. 1995)).  Having concluded that on the face of the third party complaint Assurance properly denied coverage, Mark I's claim for bad faith must also fail.  See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) (rejecting bad faith claim because "where there was no duty to defend, there was good cause to refuse to defend against a suit.").  For the same reasons set forth in Part A, the claim is dismissed with prejudice.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK I RESTORATION SVC,** | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO.   02-3729 |
| **ASSURANCE COMPANY OF** | : | |
| **AMERICA,** | : | |
| **Defendant** | : | |

### ORDER

AND NOW, this 12th day of March, 2003, upon consideration of Defendant's Motion to Dismiss Plaintiff's Complaint [Doc. # 3], Plaintiff's Brief in Opposition thereto [Doc. # 4], and Defendant's Reply Memorandum [Doc. # 7], and for the reasons set forth in the attached Memorandum, it is hereby ORDERED that Defendant's Motion is GRANTED.  The Complaint is hereby DISMISSED WITH PREJUDICE.  The Clerk is hereby directed to mark this case CLOSED for statistical purposes.

BY THE COURT:

_____
**CYNTHIA M. RUFE,  J.**